114 A.2d 380 (1955)
ESSO STANDARD OIL COMPANY, a corporation of the State of Delaware, Plaintiff,
v.
John C. CUNNINGHAM, Jr., and Lydia Cunningham, his wife, Defendants.
Court of Chancery of Delaware, New Castle.
June 2, 1955.
*381 Thomas Herlihy, Jr., and Morris Cohen, Wilmington, for plaintiff.
C. Edward Duffy and J. Pearce Cann, Wilmington, for defendants.
MARVEL, Vice Chancellor.
Plaintiff seeks an order directing specific performance of a unilateral agreement made on August 8, 1940, by[1] defendant, John C. Cunningham, Jr., then a single man. Plaintiff contends that having exercised its rights under the agreement, defendant and his wife must convey to plaintiff property consisting of a gasoline service station and designated equipment used in the operation of the station in return for payment of $20,000. The agreement or option which plaintiff seeks to enforce is set forth in paragraph 13 of a general[2] agreement concerning the leasing of premises owned by defendant in Newark, Delaware, for a term of ten years ending November 30, 1950. The agreement also provided for a renewal of the lease for five additional periods of one year each at the option of the tenant, which renewals occurred. Accordingly the lease will not expire until November 30, 1955, if specific performance is not granted.
Paragraph 13 purportedly gave plaintiff the right on notice in return for payment of $20,000 to purchase the demised premises and the gasoline service station equipment set forth on a list attached to the lease "at any time during the original term or any renewal thereof". Defendant was given the right on six months notice to terminate the option unless it should be exercised within six months after notice. Such notice was not given by defendant. Paragraph 13 specifically provided that defendant would convey title free and clear of encumbrances upon receipt of notice in writing at least thirty days before the date fixed in said notice for conveyance of title and payment of the agreed purchase price.
On March 1, 1955, plaintiff gave defendant written notice of its intention to exercise the option. Mr. Cunningham by letter of March 30, declined to convey title and later refused to accept the tendered purchase price. Suit was then promptly instituted.
Defendant and his wife, to whom he was married after August 8, 1940, and who has been joined as a defendant have answered, charging that the complaint fails to state a claim upon which relief can be granted and that the option to purchase may not be specifically enforced in this Court because its terms are "unfair and unconscionable to defendants in that the stated purchase price of $20,000 is so grossly inadequate as to amount to hardship and fraud".
The fact that Mr. Cunningham married after entering into the agreement of August 8, 1940, does not affect his undertaking if plaintiff is entitled to specific performance. The wife, however, has been properly joined as a party, Ardito v. Howell, 29 Del.Ch. 467, 51 A.2d 859. Furthermore, no showing was made at trial that the option clause had been cancelled or otherwise had become inoperative at any time prior to *382 March 1, 1955. Paragraph 13 clearly provides that the option was to be exercisable at any time during the original term or any renewal thereof. Compare Ardito v. Howell, supra.
Defendants' entire case therefore rests on the defense that it would be inequitable under the facts and circumstances of the case to grant specific performance. Defendants' position on this score is broken down into three charges. The first is that plaintiff made misrepresentations which induced defendant to enter into the agreement. Defendants next contend (assuming there to have been no actual misrepresentation) that Mr. Cunningham having mistakenly relied on what he considered plaintiff's assurances that the option would not be exercised, plaintiff may not have the bargain enforced. Finally defendants assert that the contract is so grossly unfair not only on its face but also because of changed conditions in the Newark area that it would be unjust to uphold it.
Considering this last defense first, it appears from the facts adduced at trial that Walter F. Spath, plaintiff's agent, came to John C. Cunningham, Jr., in 1940 with the proposition that he give up his gasoline service station rental arrangement with Sinclair Refining Company in Newark and purchase a nearby site where plaintiff would furnish him Esso products. Defendant was interested in the proposal and told Mr. Spath of an available property on which Spath on Cunningham's behalf took an option to purchase. Mr. Spath actively assisted in the purchase arrangements including the obtaining of mortgage money from the Elkton Banking and Trust Company. In making the purchase defendant invested $2,000 of his own and in all borrowed $13,000 from the bank for the purchase of the land and construction of the gasoline service station. Defendant then rented the premises to plaintiff at a rental of $138 per month, which rentals were assigned to Elkton Banking and Trust Company until defendant's borrowings were paid in full and the mortgage satisfied on April 3, 1951. The bank records disclose that the property as improved was appraised at $18,000, and although the actual appraisers did not testify, the reasonableness of this appraisal is supported by other testimony. The appraisal approximates the principal amounts invested in the project by defendant which total almost $5,000 to which must be added the borrowed $13,000. If the option had been exercised at or about the time the station was completed in February 1941, defendant would have made a profit in the transaction.
Following the completion of the station it was operated by defendant under a sublease from plaintiff and later by defendant's wife after defendant entered the armed services. In 1949 defendant on his part subleased to a third party, an arrangement which nets defendant about $4,000 a year.
Returning to the time of the purchase of the property by defendant it is readily apparent that there is no evidence that plaintiff knew or could have known at that time that the property in question would greatly appreciate in value over the term of the lease. Testimony in the record as to the present value of defendant's gasoline service station merely reflects the general real estate picture in Newark today. Not only the cheapening of the dollar but rapid industrial and residential growth in recent years have at least doubled or tripled most real estate values in the Newark area. Defendants have made and could make no showing that plaintiff had any peculiar knowledge that enabled it to foresee this turn of events. Accordingly cases cited by defendants in which the purchasers are shown to have known at the time of the contract that the land bargained for had an actual value greatly in excess of the contract price are not in point. While defendants have proved hardship in the sense that they would realize subtantially more in a sale of their property at its present market value rather than at the option price, a modern court of equity cannot force a party to renegotiate a contract for the sale of land solely in the light of changes in land values occurring after the date of the contract, Sinclair Refining Co. *383 v. Miller, D.C.S.D.N.Y., 106 F.Supp. 881; Cities Service Oil Co. v. Viering, 404 Ill. 538, 89 N.E.2d 392, 13 A.L.R.2d 1448; 49 Am.Jur., Specific Performance, § 64, p. 78 and Annotation, 11 A.L.R.2d 390, at page 406. Compare Glenn v. Tide Water Associated Oil Co., Del.Ch., 101 A.2d 339, in which it was held that mere inadequacy of consideration does not in itself justify a denial of the right of specific performance. Despite comments as to what constitutes hardship justifying denial of specific performance in cases such as Willard v. Tayloe, 8 Wall. 557, 19 L.Ed. 501; Godwin v. Collins, 3 Del.Ch. 189, aff. 4 Houst. 28, and Watters v. Ryan, 31 S.D. 536, 141 N.W. 359, I do not believe that changed conditions justify the denial of specific performance when a contract is unambiguous and fair at the time it was entered into and the party seeking relief is not guilty of laches or bad faith. While the granting of a decree of specific performance is discretionary, there must be an exercise of judicial rather than arbitrary discretion, Hudson v. Layton, 5 Har. 74; Godwin v. Collins, supra, and Matthes v. Wier, 10 Del.Ch. 63, 84 A. 878.
In support of the charge of misrepresentation or bad faith defendants contend that Mr. Spath, a duly authorized agent of the plaintiff, falsely represented to defendant that plaintiff would not exercise the option to purchase, that the lease to be entered by defendant into was the same as the lease without option under which Lambert Brothers operated an Esso station at Marshallton, and that Esso Standard Oil Company was not in the real estate business.
Admittedly fraud, misrepresentation or overreaching may invalidate or vary a written contract and oral proof of such acts is not barred by the parol evidence rule. In the case at bar, however, I am of the opinion that there was no actual trickery or overreaching practiced by plaintiff. During the negotiations preceding the signing of the contract of August 8, 1940, defendant was represented by counsel, although such counsel took no part in actual negotiations over the terms of the lease. It does appear, however, that prior to August 8, 1940, Mr. Cunningham took the proposed form of agreement to his attorney, who went over it paragraph by paragraph with defendant and objected to the clause giving plaintiff an option to purchase the leased premises. Notwithstanding such advice defendant in his attorney's presence signed the agreement placing his initials opposite the option clause as well as opposite all other clauses in the printed agreement in which typewritten words or figures had been added. While plaintiff may well have concluded at the time of the execution of the August 8, 1940, agreement that plaintiff would not exercise the purchase option, such conclusion was not justified. Opinions and statements as to probable future results are not generally fraudulent even though they relate to material matters, Eastern States Petroleum Co. v. Universal Oil Products Co., 24 Del.Ch. 11, 3 A.2d 768, although a statement of opinion by one with superior knowledge may involve a statement of material fact, Smith v. Land and House Property Co., L.R. 28, Ch.D. 7. While it is obvious that plaintiff's representative, Mr. Spath, was vastly more versed in the matter of leasing gasoline stations than defendant, I am not convinced that Spath's representations went beyond a mere expression of opinion that the option would not be exercised. His statements to defendant to the effect that it was unlikely that plaintiff would exercise the option had a basis in that few, if any, similar options had been exercised by plaintiff in Delaware at the time the agreement was executed. It is further obvious that it is plaintiff's policy not to hold title to gasoline service stations which sell plaintiff's products. Insofar as representations about the Lambert lease are concerned, I am satisfied that Mr. Spath merely referred to such lease as a good proposition similar to the proposed arrangements with defendant. The Lamberts, however, apparently insisted that there be no purchase option granted to plaintiff. Defendant imprudently disregarded his attorney's advice on this score and entered into an unambiguous agreement which gave plaintiff the option it wanted.
*384 While defendants urge that there are elements of mistake in the transaction, I am unable to agree. Both plaintiff and defendant knew what they were bargaining for, but defendant disregarded his attorney's advice and was outbargained.
Were the obligations and remedies of the parties to the present contract mutual, then defendant might have required plaintiff to take the property off his hands when he was in military service, gasoline rationed, and his wife about to become a hopeless invalid. While an argument based on the absence of mutuality of remedy in the case at bar might be made in other jurisdictions, in Delaware, it is not necessary that there be mutuality of remedy if a party seeking specific performance of a contract is otherwise entitled to such relief, Ehrenstrom v. Phillips, Del.Ch., 77 A. 81; G. W. Baker Machine Co. v. United States Fire Apparatus Co., 11 Del.Ch. 386, 97 A. 613; Sharpless-Hendler Ice Cream Co. v. Davis, 16 Del.Ch. 315, 147 A. 305.
One further point to be considered is that generally a court of equity should not grant specific performance where to do so would result in little or no benefit to plaintiff and inflict grave injury on defendant. In the case at bar, however, there is no evidence that plaintiff has sought to exercise the option solely to harass and injure defendant, and presumably plaintiff in the exercise of honest business judgment considers taking up the option necessary. This Court cannot substitute its judgment for that of the corporate plaintiff.
Having held that the option was in force at the time it was exercised and that there are no equitable reasons why in the exercise of the Court's judicial discretion, specific performance should not be decreed, plaintiff's prayer for an order directing conveyance of defendants' service station property in Newark in return for payment of the stipulated purchase price will be granted. While a contract to transfer title to personal property is generally not specifically enforced, in order to avoid a multiplicity of suits jurisdiction will be assumed and relief in the form of specific performance of defendants' agreement to deliver a bill of sale transferring title to the personal property listed on schedule A to the lease as amended will also be granted, Cohen v. Markel, Del.Ch., 111 A.2d 702.
Order on notice.
NOTES
[1] Defendant in this opinion refers to John C. Cunningham, Jr., the contracting party defendant.
[2] In the general agreement of August 8, 1940, plaintiff is referred to as Standard Oil Company of New Jersey. Later plaintiff changed its name to Esso Standard Oil Company.