EASTERN STATES PETROLEUM CO., INC., a corporation of the State of Delaware,

Complainant,

*vs.*

UNIVERSAL OIL PRODUCTS COMPANY, a corporation of the State of Delaware,

Defendant.

UNIVERSAL OIL PRODUCTS COMPANY, a corporation of the State of Delaware,

Cross-complainant,

*vs.*

EASTERN STATES PETROLEUM CO., INC., a corporation of the State of Delaware,

Cross-defendant.

*New Castle, Jan. 23, 1939.*

20

*Arthur G. Logan,* of Marvel, Morford & Logan, for complainant and cross-defendant.

*Clarence A. Southerland,* of Ward & Gray, of Wilmington (*John H. F. Leonard* and *Hugh A. Fulton,* both of the New York Bar, of counsel), for defendant and cross-complainant.

THE CHANCELLOR: The case is before this court on a bill to set aside a license agreement, which permitted the complainant, on the payment of certain fees, to use a patent process, known as the "Dubbs Process," to crack crude oil for the production of gasoline. Both parties to that agreement knew that crude oil produced in the East Texas oil fields was to be used by the defendant for that purpose.

The original bill, as amended, alleges that the defendant's agents falsely stated to the complainant's officers that "East Texas crude oil, treated under the Dubbs Cracking Process, would yield 69% of gasoline, having an octane number of 70." It, also, alleges, in substance, that such false representations induced the complainant to execute the license agreement in question; that, because of such false representations, that agreement was voidable at the complainant's election; that the complainant had elected to rescind such agreement, and it, therefore, should be set aside by this court on the complainant's application.

The only questions to be determined are:

1. Whether the statements made by the defendant's agents to the complainant's officers are representations of material facts or mere opinions.

2. Whether, even if such representations related to material facts, they induced the execution of the contract

in question, or whether the complainant's officers acted on their own knowledge as experts in the production of gasoline.

In order for a false representation to be fraudulent, it must relate to a material fact, and not be a mere opinion or prediction as to possible future results. *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 4 *W. W. Harr.* (34 *Del.*) 435, 154 *A.* 883; *Phoenix Oil Co. v. Mackenzie Oil Co.,* 4 *W. W. Harr.* (34 *Del.*) 460, 154 *A.* 894; *Montgomery v. Jacobs Bros. Co.,* 5 *W. W. Harr.* (35 *Del.*) 112, 159 *A.* 374; *Nye Odorless Incinerator Corp. v. Felton,* 5 *W. W. Harr.* (35 *Del.*) 236, 162 *A.* 504. Such a representation must, also, be relied on by the person claiming to have been defrauded by it (*Mackenzie Oil Co. v. Omar Oil & Gas Co., supra; Phoenix Oil Co. v. Mackenzie Oil Co., supra; Montgomery v. Jacobs Bros. Co., supra; Nye Odorless Incinerator Corp. v. Felton, supra*); but a court of equity will grant relief, even though the statement made to the person defrauded was not known to be false by the person making that statement. *Metropolitan Life Insurance Co. v. Stern,* 124 *N. J. Eq.* 391, 2 *A.* 2d 51; 2 *Pom. Eq. Jur.,* (4th *Ed.*) *Sec.* 885; 1 *Black on Resc. & Can.,* (2nd *Ed.,*) *Sec.* 102.

A different rule is applied in a court of law. *Mackenzie Oil Co. v. Omar Oil & Gas Co., supra; Phoenix Oil Co. v. Mackenzie Oil Co., supra; Montgomery v. Jacobs Bros. Co., supra.*

Mere expressions of opinion as to probable future results certainly, when clearly made and understood as such, do not constitute false representations, though they relate to material questions. *Nye Odorless Incinerator Corp. v. Felton,* 5 *W. W. Harr.* (35 *Del.*) 236, 162 *A.* 504; 2 *Pom. Eq. Jur.* (4th *Ed.*) *Sec.* 878; 1 *Black on Resc. & Can.,* (2nd *Ed.*) *Sec.* 77; 5 *Willist. on Contr.,* (*Rev. Ed.*) *Sec.* 1491.

What are expressions of opinion and what are statements of fact are often difficult to determine; but the mere fact that a material statement is in the form of an opinion,

or of an estimate, is not necessarily conclusive as to whether it must be treated as such, or whether it can be regarded as a representation of fact. *Nye Odorless Incinerator Corp. v. Felton,* 5 *W. W. Harr.* (35 *Del.*) 236, 162 *A.* 504; 1 *Black on Resc. & Can.,* (*2nd Ed.*) *Sec.* 77; 5 *Willist. on Contr.,* (*Rev. Ed.*) *Sec.* 1491. "Matters which might otherwise be expressions of opinion may become the basis for an action for fraud, when stated as accomplished facts by one of the parties to the contract, so the other party may reasonably treat it as a fact and rely and act upon it as such, and it is accepted and relied on by such other party." 1 *Black on Resc. & Can.,* (*2nd Ed.*) *Sec.* 77; 2 *Pom. Eq. Jur.,* (*4th Ed.*) *Sec.* 878. This is because "* * * knowledge is a fact, and an assertion of knowledge, when knowledge does not exist, is an assertion not in accordance with the facts; * * *." *Restat. Contr. Sec.* 470 (*b*); see, also, *Sec.* 474 (*c*).

In determining whether a statement is made as a mere opinion, or whether it can be fairly and reasonably understood as having been intended as an assertion of a fact, both the form of the words used and the subject matter of such statement must be considered. 5 *Willist. on Contr.,* (*Rev. Ed.*) *Sec.* 1491; 12 *R. C. L.* 248. But even when statements, positive in form, are made, in view of the nature of the matter being discussed, the other party may frequently know that such statement is necessarily intended to be a mere opinion. 5 *Willist. on Contr.,* (*Rev. Ed.*) *Sec.* 1491. Whether, however, that is true in the particular case necessarily depends on the facts. Perhaps, in some cases, one of the important tests is whether the matter spoken of can be within the range of definite and positive knowledge, or whether it necessarily rests on belief and conjecture. 1 *Black on Resc. & Can.,* (*2nd Ed.*) *Sec.* 77; see, also, *Nye Odorless Incinerator Corp. v. Felton,* 5 *W. W. Harr.* (35 *Del.*) 236, 162 *A.* 504.

When representations are made by one who has, or purports to have, expert or other special and superior

knowledge, with respect to the matter being discussed, that fact is often important in considering what can be fairly and reasonably understood as a mere opinion and what is a misstatement of fact constituting fraud for which a contract can be rescinded. See *Wiest v. Garman, et. al.*, 3 *Del. Ch.* 422, 423; *Id.*, 4 *Houst.* 119; *Omar Oil & Gas Co.. v. Mackenzie Oil Co.*, 3 *W. W. Harr.* (33 *Del.*) 259, 138 A. 392; *Smith v. Land & House Property Co., L. R.* 28 *Ch. D.* 7; *Maxwell Ice Co. v. Brackett, etc., Co.* 80 *N. H.* 236, 116 *A.* 34; 1 *Black on Resc. & Can., Sec.* 182; *Restat. Law of Contr., Sec.* 474.

In *Smith v. Land & House Property Co., supra,* the court said:

"It is material to observe that it is often fallaciously assumed that a statement of opinion cannot involve the statement of fact. In a case where facts are equally well known to both parties, what one of them says to the other is frequently nothing but an expression of opinion. * * * But if the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best involves very often a statement of a material fact for he impliedly states that he knows facts which justify his opinion. * * * "

Such are the general principles applicable to this case, but the difficulty is to apply them correctly to the facts. The evidence shows that the alleged false representations made by the defendant, and relied on by the complainant are of two kinds:

1. Statements in letters written by agents of the defendant company to officers of the complainant in 1934 and 1935, with respect to results that could be obtained by treating East Texas crude oil with the Dubbs Cracking Process.

2. Oral statements made by representatives of the defendant company to the complainant's officers, with respect to the quantity and quality of gasoline that could be produced by treating East Texas crude oil with the Dubbs Cracking Process.

The defendant's motion to strike out the complainant's evidence is somewhat analogous to a motion for a nonsuit in the law courts. If, therefore, any of the alleged statements tend to prove the allegations of the complainant's bill, that false representations inducing the execution of the contract in question were made, that motion must be refused. The statements in the letters relied on by the complainant were in somewhat guarded language. They repeatedly used the words "estimate" or "estimated," and, therefore, when read as a whole could not have been fairly and reasonably understood by Mr. Kahle to have been intended as more than mere estimates or opinions, with respect to the subject matter. This would seem to be particularly true in view of the fact that Mr. Kahle was no novice in the oil business. In fact, the representations most strongly relied on are those in the second class. The complainant does not deny that the laboratory tests showed that when East Texas crude oil was treated with the Dubbs Cracking Process 69% of gasoline, having an octane number of 69.4 in one case and of 70 in the other, was produced. Mr. Kahle knew that these were mere laboratory tests and that there was no commercial plant in operation which alone treated that kind of crude oil with the Dubbs Process; but the record contains evidence which tends to show that positive representations were made that the results shown by the laboratory tests would be the same in a commercial plant applying the same process to East Texas crude oil.

Mr. Kahle had been engaged in some phases of the oil business for many years and was, undoubtedly, familiar with some cracking processes, but it is conceded that the characteristics of crude oil vary in different localities, and it does not appear that he was familiar with the precise details of the Dubbs Process, or with the results that could be accomplished by it, when applied to East Texas crude oil. That was a patented process, with respect to which he had the right to regard the defendant's agents as experts, having much greater knowledge as to the particular results

that could be accomplished by its use than he had. He, therefore, had the right to regard the defendant's statements as representations of fact, relating to the characteristics, attributes, accomplishments and inherent capacity of the Dubbs Process rather than as mere statements of opinion as to possible future results of a more or less problematical or promissory nature. *Finley Rubber-Varnish, etc., Co. v. Finley,* (*N. J. Ch.*) 32 *A.* 740; *Sheer v. Hoyt,* 13 *Cal. App.* 662, 110 *P.* 477. See, also, *Holloway v. Forsyth,* 226 *Mass.* 358, 115 *N. E.* 483; *Bareham & McFarland v. Kane,* 228 *App. Div.* 396, 240 *N. Y. S.* 123; *Niles v. Danforth,* 97 *Vt.* 88, 93, 122 *A.* 498; *Burroughs Adding Machine Co. v. Scandinavian-American Bank,* (*D. C.*) 239 *F.* 179.

Nor does the evidence in the record necessarily support the defendant's contention that the complainant's officers relied on their own knowledge, or made their own investigation, with respect to the results that would be accomplished by treating East Texas crude oil with the Dubbs Cracking Process. Mr. Kahle may perhaps have made some statements that would justify the contention that his knowledge of the subject matter was such that he did not entirely rely on the alleged representations of the defendant in executing the contract, which is attacked in this proceeding, but that evidence certainly is not conclusive on that question.

The defendant's motion to strike out the complainant's testimony is, therefore, refused.